No. 33,129

FAY L. GROVES and RAYMOND GROVES, Her Husband, *Appellees*, v. HOME ROYALTY ASSOCIATION, INC., HOME ROYALTY ASSOCIATION OF OKLAHOMA, a Common-law Trust; C. F. COLCORD, L. D. CALLAHAN, WILLIAM BROADHURST and W. H. HELMERICH, as Trustees of the Home Royalty Association, *Appellants*.

No. 33,127

A. E. HILDEBRAND AND WIFE, *Appellees*, v. HOME ROYALTY ASSOCIATION, INC., et al., *Appellants*.

No. 33,128

W. R. ENGLEMAN AND WIFE, *Appellees*, v. HOME ROYALTY ASSOCIATION, INC., et al., *Appellants*.

No. 33,130

OSCAR L. JOHNSON et al., *Appellees*, v. HOME ROYALTY ASSOCIATION, INC., et al., *Appellants*.

No. 33,131

WILLIAM L. BILLIPS, *Appellee*, v. HOME ROYALTY ASSOCIATION, INC., et al., *Appellants*.

(68 P. 2d 19)

Opinion filed May 8, 1937.

*Ezra Branine, Alden E. Branine, Fred Ice,* all of Newton, *James O. McVey,* of Hill City, *Eugene O. Monnet* and *Boyce H. Savage,* both of Tulsa, Okla., for the appellants.

*W. L. Sayers, John Q. Sayers* and *W. P. Sayers,* all of Hill City, for the appellees.

The opinion of the court was delivered by

SMITH, J.: These were actions to cancel mineral conveyances. Judgment was rendered for plaintiffs on the pleadings in each action. The defendants appeal.

The plaintiffs are different in each case, while the defendants are the same. The pleadings raise identical legal questions in each action. For the sake of convenience the facts will be stated in the case of *Groves v. Home Royalty Ass'n*, and the rule of law announced will govern in each case.

The petition alleged the plaintiffs were husband and wife and lived in Graham county, Kansas; that defendant, Home Royalty Association, Inc., is a foreign corporation, with its principal place of business at Tulsa, Okla., and that it does not have and on the dates mentioned did not have authority to transact business in Kansas; that defendant, Home Royalty Association of Oklahoma, is a common-law trust, with its principal place of business at Tulsa, Okla., and has never received authority to transact business in Kansas; and that neither had filed with the secretary of state the written consent of the corporation, irrevocable, that action might be commenced against it in the proper court in any county in the state in which a cause of action might arise, as required by G. S. 1935, 17-501.

The petition then alleged four individuals named as defendants were trustees of the Home Royalty Association and all four of them were residents of Oklahoma and had been personally outside the state of Kansas from the 17th day of August up to the time of filing suit; that plaintiffs were the owners of the fee-simple title to the real estate in question and were in actual possession of it, but the defendants claimed some interest in this land, which consisted of certain claims as to the ownership and in liens upon certain oil and gas and other rights in the land, which claims were evidenced by certain documents which were described as first, a mineral conveyance purporting to be executed by W. H. Jones to the Home Royalty Association, which was filed for record September 19, 1928 (a true copy of this conveyance was attached to the petition); and second, an instrument designated as a mineral deed purporting to be executed by the Home Royalty Association to the Home Royalty Association, Inc., on November 29, 1929, and filed for record on February 14, 1930 (a copy of this deed was attached to the petition).

The petition then alleged that the Home Royalty Association, during all of 1929, up to January 15, 1930, was exercising corporate powers in Kansas and disposing of units of the company in the nature of speculative securities, that is, shares of oil and gas royalties, the value of which depended on future promotion and development rather than upon present tangible assets or conditions, and that

the company never at any time had any authority to exercise corporate power, and never had any authority, as provided by R. S. 17-1201 to 17-1222, to sell its units; that the Home Royalty Association, Inc., was the successor of the Home Royalty Association of Oklahoma, and was organized to take over the business of that association; that its officers, stockholders and shareholders are officers, stockholders and shareholders of the association, and that any interest acquired by the corporation in the real estate described in the petition was acquired with full knowledge of all things set out in the petition and subject to any defense existing in favor of the plaintiffs and against the common-law trust.

The petition then alleged that on July 19, 1928, a man who represented himself to be one Abbott, and who was the agent of the Home Royalty Association, came to the house of Jones and represented that the association was forming a pool of landowners in Kansas, Oklahoma and Texas for the purpose of developing oil and leasehold interests in these states, and that his purpose in visiting Jones was to induce him to lease his land in Graham county to the association.

The petition then set out certain false representations which it alleged the agent made to Jones. These representations are not pertinent to a consideration of the legal points involved in this appeal and will not be included here.

The petition then alleged that the instrument which Jones signed was not a lease but was a mineral deed; that the association was not authorized to do business in Kansas; did not have a permit under the blue-sky law of the state and that by joining the association Jones became liable for all its debts and liabilities.

The petition then alleged that after the execution of the instrument by Jones the association delivered to him a certificate purporting to convey to him certain units in the Home Royalty Association setting out that he was to share in the income of the association in the proportion which that sum bore to the total value of all property and services received by the association, and that this certificate was issued in violation of the blue-sky laws of Kansas and was wholly void. The certificate was tendered into court to abide the orders of the court.

The petition then alleged that by reason of the fraud of the Home Royalty Association of Oklahoma and by reason of the other facts and circumstances pleaded, the mineral deed is void and of no effect

and should be canceled, and that plaintiff's title to the real estate in question should be quieted.

The prayer was for relief as described above. The mineral deed, which was attached to the petition, conveyed "an undivided one half interest in and to all of the oil, gas, casinghead gas, and all other minerals in and under or which may be produced from" the real estate in question, with all the incidental rights necessary to the convenient operation of the lands for such purposes. The conveyance provided that it should continue in effect for 21 years, and referred to a certain declaration of trust executed on February 28, 1926. The conveyance provided that it should be subject to any valid lease then on the land. The grantor warranted the title to it, provided that the grantee should have the right to redeem the land from any mortgage or tax or other liens and that it was assignable.

In exhibit B that was attached to the petition the Home Royalty Association of Oklahoma conveyed to the Home Royalty Association, Inc., the undivided interests in and to all of the oil, gas, casinghead gas, and other minerals which might be produced from the lands situated in Graham county, as described in a schedule attached, which included the lands in question, with the incidental rights necessary to operate the property. It recited that the sale was made subject to any rights then existing to any lessee under any valid oil and gas lease properly of record and that it was understood that the grantee should receive the grantee's undivided interest in the leases mentioned, the same as though the grantee had been the owner of the one-half interest at the date of the making of the lease. It further recited that the grantee should have the right to redeem the land from tax or other liens; that the grantee should hold the property forever. This conveyance was executed November 29, 1926.

The answer of defendants first pleaded a general denial, and then alleged that the defendant, the Home Royalty Association of Oklahoma, was a trust estate existing under the laws of Oklahoma, with its principal place of business and office in Tulsa, Okla., and that a copy of the declaration of trust was filed in the office of the register of deeds in Graham county; that the defendant, the Home Royalty Association, Inc., had been at all times a Delaware corporation with its principal office in Tulsa, and on July 10, 1930, was duly licensed to do business in Kansas, and at that time had, in accordance with the law, appointed the secretary of state to be its service agent.

The answer then alleged that on July 19, 1928, in Graham county, Kansas, Jones executed a written offer to the Home Royalty Association of Oklahoma, in which Jones agreed to convey to the association an undivided one-half interest in all the oil and other minerals under the real estate in question, and by the terms of this offer the Royalty Association was to deliver to Jones its certificate of participation in a sum fixed at $1,760. A copy of the offer was attached to the answer; the answer then alleged that at the same time this offer was made Jones executed a mineral conveyance in accordance with which he conveyed to the trust estate an undivided one-half interest in the oil and other minerals under the lands in question; that this conveyance was recorded and a copy was attached to the answer.

The answer then alleged that the offer was executed in duplicate and sent to the association at Tulsa, together with the mineral conveyance for its acceptance or rejection; that thereafter the association, relying upon the statements of Jones in his offer, executed the offer and sent one copy to Jones, together with a certificate of participation representing the interest in the trust estate due Jones in accordance with the terms of the offer, together with a copy of the declaration of trust in accordance with which the trust was organized; that this agreement and certificate were duly received by Jones and accepted by him.

The answer further alleged that the association, in accepting the offer of Jones, relied upon his statement in the offer that he had read the contract and the declaration of trust and fully understood them, and agreed that no other statements or representations were made to induce him to sign.

The answer then alleged that on or about November 29, 1929, the Home Royalty Association of Oklahoma, for a good consideration, conveyed to the Home Royalty Association, Inc., all its interest in the land in question, and that corporation was the owner thereof; and that article 12 of chapter 17 of the Revised Statutes of Kansas of 1923, commonly known as "Speculative Securities Act of Kansas," so far as it affected the validity of the contract and conveyance between plaintiffs and the trust estate and its assignee was in violation of section 8 of article 1 of the constitution of the United States.

The answer further alleged that on November 29, 1929, the trust estate and the Home Royalty Association, Inc., entered into a contract in accordance with the terms of which the trust estate con-

veyed to the corporation all of the mineral rights which it held in Kansas and Oklahoma and other states in consideration of the execution and delivering to it of 27,426.65 shares of its $8 participating cumulative preferred stock, with the further provision that the trust estate should secure within two years of that date a ratification of this transfer to the corporation from each of the landowners from whom these mineral rights were acquired, and that in the event of the failure of such ratification within the two-year period, the corporation would be entitled to tender back the mineral rights originally acquired from the landowners so refusing to ratify, and be entitled to a return of a pro-rata share of this insured preferred stock.

The answer then alleged that on April 3, 1930, the corporation, at the request of the trust estate, delivered to Jones its certificate representing 52%10 shares of its $8 participating cumulative preferred stock as his share of the stock delivered to the corporation, and on that date, for a good consideration, Jones ratified, confirmed and approved the transfer of all of the mineral rights of the trust estate, including the mineral rights in controversy, to the corporation; that the corporation, relying upon the ratification by Jones of this transfer, permitted the two-year period to expire and could no longer tender back to the trust estate the mineral rights involved in this litigation; that since the ratification the corporation has managed the mineral rights, paid taxes on them, and plaintiffs should be estopped to deny the validity of its rights.

The answer then alleged that the officers of the corporation had, prior to the ratification by Jones, agreed to serve their full term of office without pay in consideration of the ratification of the transfer of the properties from the trust estate to the corporation and in reliance upon this ratification served their full term of office without pay, by reason of which the plaintiff should be estopped to deny the validity of the claim of the corporation.

The answer next pleaded that the action and plaintiff's remedy were barred by the statute of limitations.

The prayer was for judgment denying plaintiffs relief.

An affidavit was filed in the case signed by the person in charge of the records of the blue-sky department, that after searching the records of that department he had been unable to find where the Home Royalty Association, a corporation, or the Home Royalty Association of Oklahoma had ever been granted a permit to sell any

securities, shares of stock, units of capital or certificates of participation, or had any person been registered as the agent of either of these companies in Kansas.

After this answer was filed the plaintiffs filed their motion for judgment on the pleadings. This motion was allowed by the trial court on the ground that at the time of the execution of the deed described the defendant, the Home Royalty Association, was not authorized to sell or dispose of its certificates of participation or other speculative securities in the state of Kansas and that the transaction set out in the pleadings was in violation of law.

Since judgment was given in favor of plaintiffs on the pleadings, which consisted of the petition and answer, if the answer stated a defense to the cause of action pleaded in the petition the judgment should be reversed. In the first place, the petition charges that the transaction of issuing the participation certificates was in violation of the blue-sky law and hence void. In this connection it must be pointed out that while the petition alleged that neither the Home Royalty Association of Oklahoma nor the Home Royalty Association, Inc., had permission to sell their certificates, the general denial in the answer put this in issue. Furthermore, transactions such as those described in the petition in violation of the blue-sky law are not void but voidable. (See *Westhusin v. Landowners Oil Ass'n,* 143 Kan. 404, 55 P. 2d 406; *Moos v. Landowners Oil Ass'n,* 136 Kan. 424, 15 P. 2d 1073.) Under such circumstances judgment could not be rendered on the pleadings based on that theory.

There is another point, however, which must be considered. It will be noted that the last transaction had between the landowner and one of these corporations was in April, 1930, when the corporation delivered its certificate of shares to Jones, and that the answer pleaded that in November, 1929, the trust estate had conveyed all its interest in the land in question to the corporation. This action was not begun until June, 1935. The answer pleads that the action is barred by the statute of limitations. Plaintiffs argue that their action is not barred because the answer admits that both the corporation and the trust estate were nonresidents of this state—hence the statute did not run in their favor. The trouble with that argument is that the answer pleads that the Home Royalty Association, a corporation, was on July 10, 1930, soon after its transaction with Jones, duly licensed to do business in Kansas, and at that time had, in accordance with the laws of Kansas, appointed the secretary of state to be its service agent. Plaintiffs argue that this allegation

is no allegation that the corporation continued to be licensed to do business in the state. It does, however, state the fact sufficiently as against a motion for judgment on the pleadings, since no motion to make definite and certain was directed at it and no reply filed by the plaintiffs. Furthermore, the statute providing for licensing foreign corporations to do business in the state provides that the corporation must file a consent with the secretary of state irrevocable that action may be commenced against it in the proper court in any county in the state in which a cause of action might arise. The answer pleads that the corporation complied with that statute. The presumption is that the consent was filed and that it was irrevocable as required by that statute. The theory upon which the petition is drawn is apparently that plaintiffs have only to set aside the conveyance to the trust estate and the conveyance by the trust estate to the corporation will fail when the first conveyance is set aside, and plaintiffs will be entitled to have their title quieted. The trouble with that theory is that the answer pleads the conveyance from the trust estate to the corporation, and further pleads that Jones received the stock issued by the corporation to him pursuant to this conveyance and "ratified, confirmed and approved" the transfer. Plaintiffs refer to this allegation, but argue that no facts are pleaded to constitute ratification. Hence the statement in the answer is a mere conclusion of the pleader. There are some facts pleaded, such as the acceptance and retention of the certificate of shares; furthermore, that Jones had been in possession of a copy of the declaration of trust for nearly two years before the alleged ratification. Certainly this is sufficient allegation of facts constituting ratification, since neither a reply nor a motion to make definite and certain was filed.

Plaintiffs argue that the trust agreement is unconscionable and for that reason the conveyances should be set aside. It will not be necessary to discuss the features of this trust agreement upon which plaintiffs rely, in view of the conclusion we have reached. The plaintiffs have waited too long to bring their action according to the allegations of the answer. In *Westhusin v. Landowners Oil Ass'n*, 143 Kan. 404, 55 P. 2d 406, in considering a similar question, this court said:

"They could not affirm for a while and then disaffirm. Operation of the pool affected property and financial interests of many persons, and plaintiffs could not experiment regarding the advantages to them of membership in the pool for more than four years, and then successfully apply to a court of equity to take them out." (p. 408.)

See, also, *Sauberli v. Sledd,* 143 Kan. 350, 55 P. 2d 415, and *Fitch v. United Royalty Co.,* 143 Kan. 486, 55 P. 2d 409.

The judgment in all five cases is reversed, with directions to proceed to try the action in accordance with the views herein expressed.